NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5432-14T3

STATE OF NEW JERSEY,

       Plaintiff-Appellant,

v.

RYAN SUTHERLAND,

       Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

May 5, 2016

APPELLATE DIVISION

Argued March 8, 2016 — Decided May 5, 2016

Before Judges Yannotti, St. John and Guadagno.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 14-10-0985.

Paula Jordao, Assistant Prosecutor, argued the cause for appellant (Fredric M. Knapp, Morris County Prosecutor, attorney; Ms. Jordao, on the brief).

Nelson Gonzalez argued the cause for respondent.

The opinion of the court was delivered by

GUADAGNO, J.A.D.

By our leave granted, the State appeals from the June 26, 2015 Law Division order granting defendant Ryan Sutherland's motion to suppress.  Defendant was stopped by a police officer for driving a vehicle at night with an inoperable rear tail

light. When the officer learned that defendant's license was suspended, he issued two summonses.

Defendant appeared in municipal court and it was determined that his license suspension was due to a third conviction for driving while intoxicated (DWI). Subsequently, a grand jury sitting in Morris County returned a one-count indictment charging defendant with fourth-degree operating a motor vehicle during a period of license suspension for a second or subsequent DWI conviction, N.J.S.A. 2C:40-26(b).

Defendant moved to suppress the traffic stop and to dismiss the indictment. He argued that because his vehicle had three operable tail lights, he was in compliance with N.J.S.A. 39:3-61(a) and -66, and the traffic stop was unreasonable. The judge agreed and granted defendant's motion to suppress the motor vehicle stop, although he denied defendant's motion to dismiss the indictment.

We granted the State's motion for leave to appeal and now hold that, even if the officer was mistaken that the inoperable tail light constituted a Title 39 violation, he had an objectively reasonable basis for stopping defendant's vehicle. Therefore, we reverse.

We glean the following facts from the transcript and the exhibits introduced at the hearing on defendant's motion to

suppress. On February 3, 2014, just before 9:00 p.m., Mount Olive Township Police Officer Michael Carletta was on patrol in the southbound lane of Route 206 when he observed a Toyota Camry travelling northbound with one of its tail lights not illuminated.

Carletta made a U-turn and approached the Camry in an adjacent lane.[1] In a drizzling rain, he observed that the Camry had four tail lights, two on each side. While both tail lights were illuminated on the driver's side, the upper tail light on the passenger's side was not functioning. Carletta activated the dash cam video recorder on his police vehicle, pulled into the lane directly behind the Camry, and activated his police lights to effect a stop.

Carletta approached the Camry and observed defendant behind the wheel and an unidentified female in the passenger's seat. When Carletta requested defendant's driving credentials, defendant responded that he had a license but that it was "not on [him] right now." After obtaining defendant's name and date of birth, Carletta returned to his vehicle and contacted dispatch to verify that defendant had a license. Shortly

---

[1] At this point, Route 206 has two northbound and two southbound lanes.

 A-5432-14T3

thereafter, Carletta was informed that defendant's driver's license was suspended.

Carletta returned to the Camry and told defendant that his license was suspended and he could not continue driving. Carletta suggested that the female passenger drive them to their destination. Carletta explained to defendant that his "main reason for pulling [him] over was [his] maintenance of [his] tail light," and issued traffic summonses for driving with a suspended license, N.J.S.A. 39:3-40, and for maintenance of lamps, N.J.S.A. 39:3-66. Defendant and the female passenger switched spots, and the female drove off. The stop lasted approximately fifteen minutes.

On June 11, 2015, the Law Division held a hearing on defendant's motion to suppress. Officer Carletta testified that he received training in, and regularly handled, motor vehicle violations under Title 39. Carletta explained that, in his experience, drivers usually do not check their vehicles to ensure that all their lights are working, so he "stop[s] them to let them know that there is a problem with their lamp and it needs to be taken care of." Carletta's usual practice when a driver's light is out is "to give them a warning and then send them on their way."

A-5432-14T3

Carletta's rationale for stopping defendant was that his understanding of N.J.S.A. 39:3-66 required "that all lamps . . . must be in good working order." He was aware that defendant's vehicle had a non-functioning light, but did not know whether "there was a violation at that point[.]" Additionally, Carletta testified "we stop for community caretaking . . . to make the driver aware that he does have an equipment violation so that he has the opportunity to take care of it."

On cross-examination, Carletta conceded that he was not sure how many lights were required on a vehicle, but that he understood the requirement to be two total tail lights, "one on each side." He testified that vehicles were also required to have two turn signals, one on each side, as well as three brake lights, "one on each side and one on top."

Carletta acknowledged that three of four tail lights on the Camry were illuminated and that he would not have stopped defendant's vehicle but for the one non-functioning tail light, because the vehicle was not driving erratically, was within the speed limit, maintained its lane, and Carletta had no concern that anything was wrong with the driver.

On June 26, 2015, the Law Division judge issued an order, accompanied by a seventeen-page written decision granting defendant's motion to suppress the vehicle stop. The judge

found that N.J.S.A. 39:3-61(a) and -66 "set forth a baseline of what lights/lamps are required" on a motor vehicle. In reference to these statutes, the judge described the vehicle code as "arcane and chaotic" and noted that it "has not kept up with the times on this topic, and utterly fails to factor in, for example, the substantial changes in automotive design, materials, and manufacturing" since it was last updated. The judge noted that, in the past, it "would have been rare to observe . . . a vehicle with multiple rear running lights [or] more than one tail light lens on the left and right rear side of a passenger vehicle," but today that was not so.

The judge stated that the motor vehicle code created "opportunities for confusion and uncertainty for . . . those in law enforcement." The judge found that Carletta "testified honestly and candidly that he understood that any light not working properly is . . . a basis for stopping an offending vehicle."

However, the judge concluded that "Officer Carletta's understanding of the statute[s], perhaps facilitated by [their] confusing and outdated terminology, was incorrect." The judge found that the code did not declare, for instance, that "all original equipment lamps/lights" must be "in working order at all times." Instead, the statutes required "two properly

A-5432-14T3

functioning rear lights, one on each side," and that "even with one non-functioning rear light, defendant's vehicle still had three properly functioning lights."

Relying on our published opinion in State v. Puzio, 379 N.J. Super. 378 (App. Div. 2005), and an unpublished opinion in State v. McDade, No. A-4909-07 (App. Div. Mar. 30, 2009), the judge concluded that Carletta held "a mistaken view of the law in question" and therefore his "suspicion was not objectively reasonable" and "could not justify his warrantless stop of defendant's vehicle."

The judge rejected the State's argument that the stop was justified under the community caretaking doctrine. Relying on McDade, the judge concluded that the State "has failed to present compelling evidence that defendant's vehicle presented a safety hazard, thus warranting the community caretaking doctrine." The judge noted that Carletta "did not express any public safety concerns in his role as a 'caretaker,'" and made the factual finding that Carletta "acted solely and exclusively pursuant to law enforcement objectives, based on his good faith, yet misplaced, belief as to the impact of N.J.S.A. 39:3-66."

On appeal, the State claims that Officer Carletta's stop of the Camry was lawful because he had a reasonable and articulable suspicion of a motor vehicle violation. The State argues

alternatively that the stop was justified under the community caretaking doctrine.

We begin our analysis by noting the bedrock constitutional principle that a police stop of a moving vehicle constitutes a seizure of the vehicle's occupants and therefore falls within the purview of the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89, 95 (1996); State v. Baum, 199 N.J. 407, 423 (2009).

The State argues that Carletta had articulable and reasonable suspicion to stop defendant because the non-functioning tail light constituted a violation of N.J.S.A. 39:3-66. Even if there was no violation, the State maintains that Carletta's mistake of law did not negate the reasonableness of the traffic stop.

We first address the motion judge's conclusion that, because defendant's Camry had functioning tail lights on the left and right sides, the non-functioning fourth tail light did not constitute a motor vehicle violation and the officer's "mistaken view of the law" rendered his stop of the vehicle unreasonable.

N.J.S.A. 39:3-61(a) provides in pertinent part:

> Every motor vehicle . . . shall be equipped
> on the front with at least two headlamps, an
> equal number at each side, and with two turn
> signals, one on each side; and on the rear

with two tail lamps, two or more stop lamps,
. . . two turn signals, and two reflectors,
one of each at each side; . . . In addition,
every motor vehicle shall be equipped with
adequate license plate illumination, and
with one or more lamps capable of providing
parking light[.]

N.J.S.A. 39:3-66 requires:

All lamps, reflectors and other illuminating
devices required by this article shall be
kept clean and in good working order and, as
far as practicable, shall be mounted in such
a manner as to reduce the likelihood of
their being obscured by mud or dust thrown
up by the wheels.

It is undisputed that Officer Carletta stopped defendant's
Camry because one of its four tail lights was not illuminated,
and then issued a summons believing that it violated N.J.S.A.
39:3-66. No published decisions interpret the meaning of this
statute and the motion judge relied heavily on the unpublished
opinion in State v. McDade, which presented similar facts.

McDade involved the stop of a 2001 Volkswagen Jetta because
a passenger side rear tail light was out. McDade, supra, slip
op. at 2. The officer acknowledged that it was possible that
the vehicle had two tail lights on each side and that only one
of the four tail lights was out. Id. at 3. Subsequent proofs by
the defendant demonstrated that the 2001 Volkswagen Jetta had
"multiple lights on each side of the vehicle's rear." Id. at 4.
The panel concluded

> suspicion based on a mistaken view of the law cannot be the reasonable suspicion required for the Fourth Amendment, because the legal justification for a traffic stop must be objectively grounded. Here, we are satisfied that the law requires only a total of two functioning rear tail lamps, one on each side. Thus, if as defendant maintains, only one of four tail lights was extinguished, leaving the minimum number of working rear tail lights, then no violation of the law occurred here and [the officer's] honest but mistaken view of the law cannot justify the vehicular stop in issue.

> [Id. at 15-16.]

Because the record in McDade was not clear as to "whether there were a total of two functioning rear tail lights, one on each side," the panel remanded for further fact-finding. Id. at 16.

McDade is non-precedential. R. 1:36-3; Liberty Mut. Ins. Co. v. Garden State Surgical Ctr., L.L.C., 413 N.J. Super. 513, 525 n.5 (App. Div. 2010). Moreover, to the extent that McDade holds that a traffic stop premised upon a good faith mistake of law is objectively unreasonable and cannot satisfy the reasonable suspicion requirement of the Fourth Amendment, we disagree with the decision.

The motion judge also relied on State v. Puzio. In Puzio, a police officer saw a sports car that bore a commercial license plate but lacked signage identifying the owner of the vehicle. Puzio, supra, 379 N.J. Super. at 380. Believing this violated

N.J.S.A. 39:4-46(a), which requires display of a business name and address on a commercial vehicle, the officer stopped the car and the defendant was ultimately arrested for DWI. Ibid. The municipal judge denied the defendant's motion to suppress and reasoned that the stop was made "in good faith and based on articulable suspicion." Ibid. The defendant pled guilty to DWI and appealed. Id. at 381. A Law Division judge agreed that the police officer had a reasonable and articulable suspicion to stop the driver based on his interpretation of that statute. Id. at 381.

Defendant appealed and we reversed. We first noted the distinction between cases where an officer has a mistaken view of a statute and those "where the officer correctly understands the statute but arguably misinterprets the facts concerning whether a vehicle, or operator, has violated the statute." Id. at 382. We held that "where an officer mistakenly believes that driving conduct constitutes a violation of the law, but in actuality it does not, no objectively reasonable basis exists upon which to justify a vehicle stop." Id. at 383. We rejected the judge's implied[2] reliance on the officer's good faith, noting

---

[2] We noted that the municipal judge referred to the officer's "good faith belief" and we implied that the Law Division judge did the same by concluding that he need not resolve whether the officer's interpretation of the statute was correct. Ibid.

that "our courts have rejected a good faith exception to the Fourth Amendment exclusionary rule." Ibid. (citing State v. Novembrino, 105 N.J. 95, 157-58 (1987)).

We found that,

> [e]ven under the good faith exception rejected in Novembrino, objective reasonableness is judged through the eyes of a reasonable officer acting "in accordance with governing law.  To create an exception here would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey."
>
> [Id. at 384 (quoting United States v. Lopez-Soto, 205 F.3d 1101, 1106 (9th Cir. 2000)).]

Puzio and McDade were decided before the United States Supreme Court's recent decision in Heien v. North Carolina, 574 U.S. ___, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014).  In Heien, an officer stopped a vehicle after observing that its right brake light was not functioning. Id. at ___, 135 S. Ct. at 534, 190 L. Ed. 2d at 480.  After a consent search, a bag of cocaine was recovered and the vehicle's owner was charged with attempted cocaine trafficking. Id. at ___, 135 S. Ct. at 534-35, 190 L. Ed. 2d at 481.  The defendant moved to suppress the evidence, contending that the stop violated the Fourth Amendment. Id. at ___, 135 S. Ct. at 535, 190 L. Ed. 2d at 481.  After a hearing,

the trial court denied the suppression motion and the defendant pled guilty, reserving his right to appeal. Ibid.

The North Carolina Court of Appeals determined that driving with only one working brake light was not illegal under North Carolina law and the officer's mistake of law invalidated the stop and subsequent search. Ibid. The State appealed, and the North Carolina Supreme Court reversed, concluding that the officer who initiated the stop "may make a mistake, including a mistake of law, yet still act reasonably under the circumstances." Ibid.

The United States Supreme Court granted certiorari to consider "whether [a police officer's] mistake of law can nonetheless give rise to the reasonable suspicion necessary to uphold the seizure [of a vehicle] under the Fourth Amendment." Id. at ___, 135 S. Ct. at 534, 190 L. Ed. 2d at 480. The Court held that just as mistakes of fact can establish reasonable suspicion, so too can mistakes of law:

> [R]easonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is

A-5432-14T3

no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

[Id. at ___, 135 S. Ct. at 536, 190 L. Ed. 2d at 482-83.]

Moreover, the Court highlighted "the reality that an officer may 'suddenly confront' a situation in the field as to which the application of a statute is unclear — however clear it may later become." Id. at ___, 135 S. Ct. at 539, 190 L. Ed. 2d at 486. Indeed, the Court noted an officer may "have to make a quick decision on the law." Ibid. Accordingly, the Heien Court concluded that so long as such a mistake is objectively reasonable, it may give rise to reasonable suspicion. Id. at ___, 135 S. Ct. at 540, 190 L. Ed. 2d at 487.

Given the well-reasoned holding in Heien, we express doubts as to the continued vitality of Puzio. Nor are we as convinced as the McDade panel that a non-functioning fourth tail light cannot be a violation of Title 39.[3]

---

[3] In response to McDade, Assembly Bill 354 was introduced, which would have made it "an equipment violation if any lighting device installed on a vehicle is not in working order." 2012 Bill Text N.J. A.B. 354 (Jan. 10, 2012). The proposed bill would have amended N.J.S.A. 39:3-66 to change the language "required by this article" to "equipped on a motor vehicle." Ibid. The bill also proposed changing a portion of N.J.S.A. 39:3-61(j) from "Required headlamps, tail lamps . . . shall be
(continued)

14

A-5432-14T3

As the motion judge noted, there is ambiguity in the relevant statutes. N.J.S.A. 39:3-61(a) provides that each motor vehicle must have two tail lamps; N.J.S.A. 39:3-66 provides that all lamps "required" by Title 39 "shall be kept in good working order."

The motor vehicle statutes thus indicate that two tail lamps are required and they must be kept in good working order. However, one statute appears to encourage law enforcement officers to stop drivers to notify them when any vehicle lamps are not in working order. N.J.S.A. 39:3-61(*l*) provides:

> Whenever a law enforcement officer detects a motor vehicle with a lamp not in working order, the driver may be permitted to park the vehicle temporarily at some safe place nearby and make the necessary repairs or replacement to restore the lamp to working order before moving the vehicle, in which event, there is no violation of this Title.

---

(continued)
lighted" to stating that "All headlamps, tail lamps . . . shall be lighted." Ibid. Both changes were rejected and an amended bill passed the Assembly without any changes made to the language of "required by this article" under N.J.S.A. 39:3-66, and only adding to N.J.S.A. 39:3-61(a) the language "or more" next to the number of stop lamps required on motor vehicles. 2012 Bill Tracking N.J. A.B. 354 (Jan. 10, 2012); A.B. 354 [First Reprint] 215th Leg., (N.J. 2013).

With minor amendments, the Senate passed S. 3028, an identical bill to A.B. 354. Governor Christie signed the bill into law on January 17, 2014 as P.L. 2013, c. 230. The law neither amended N.J.S.A. 39:3-66 nor required that any more than the two requisite tail lamps under Title 39 were required to be illuminated.

While the reference to "no violation" can fairly be interpreted as permitting an officer to stop a vehicle only when a "required lamp" is not in working order, the Legislature did not include that specific limitation in this section, as it did with N.J.S.A. 39:3-66. Words chosen by the Legislature are given their plain meanings. 612 Assocs., L.L.C. v. N. Bergen Mun. Utils. Auth., 215 N.J. 3, 15 (2013); see also GE Solid State, Inc. v. Dir., Div. of Taxation, 132 N.J. 298, 308 (1993) (finding Legislature's use of words in one section of statute indicated that omission of same words in another section was intentional).

At the time Carletta stopped defendant's Camry, there was no authoritative judicial interpretation of this statute, and while the statute may be read to apply only to non-working, required lamps, a law enforcement officer could have reasonably interpreted the statute to permit that officer to stop and advise drivers of any non-functioning lights and allow the driver an opportunity to correct the problem without penalty. This is exactly what Officer Carletta intended to do when he stopped defendant's Camry. Carletta, who was found credible by the motion judge, testified that his usual practice and his initial intention here was to merely issue a warning for a defective lamp.

We also note that the distance visibility requirement of N.J.S.A. 39:3-48(b) requires the light "from every <u>required</u> exterior lamp on a vehicle shall be visible from a distance of 500 feet," but the locational visibility requirement of N.J.S.A. 39:3-48(d) is not limited to "required" lights:

> Light from <u>every headlamp</u>, other driving lamp, clearance lamp, identification lamp and single-faced turn signal mounted on or at the front of a vehicle, and front parking light, shall be visible to the front; that from <u>every side-marker lamp</u> and side reflector shall be visible to the side; that from <u>every stop lamp</u>, <u>tail lamp</u>, clearance lamp, identification lamp, back-up lamp and reflector mounted on the rear, from every turn signal mounted on the rear of a vehicle or the cab of a truck tractor, and from any rear parking lamp, shall be visible to the rear; that from any double-faced turn signal shall be visible to the front and to the rear at the side on which such lamp is mounted; and that from any projecting load marker lamp or combination marker lamp shall be visible from the direction stated in the provision requiring it.
>
> [N.J.S.A. 39:3-48(d) (emphasis added).]

We recognize that both subsections (b) and (d) should be read <u>in pari materia</u> and construed together as a unitary and harmonious whole. <u>St. Peter's Univ. Hosp. v. Lacy</u>, 185 <u>N.J.</u> 1, 14-15 (2005). However, given the ambiguities in these statutes, which the Legislature was unsuccessful in clarifying, and the absence of any authoritative judicial interpretation, we cannot conclude that Officer Carletta's interpretation that all tail

lights must be in working order was a clear mistake of law. Even if Carletta was mistaken, it cannot follow that his mistake was unreasonable.

In determining whether the stop was reasonable, we consider all details of the incident. The non-functioning tail light can be clearly seen on Carletta's dash cam video, and the stop was done in good faith and without pretext. Carletta's detention and interaction with defendant was minimal and the encounter, lasting fifteen minutes, was not unreasonably extended or more intrusive than necessary. Baum, supra, 199 N.J. at 425 (finding twenty-six minute traffic stop not unreasonable). Defendant was not arrested, and his passenger was not even asked for her driving credentials before she was allowed to drive off in the Camry. See State v. Sloane, 193 N.J. 423, 439 (2008) (police do not need reasonable suspicion to run database check of passenger during motor vehicle stop). There was no inquiry as to where defendant was coming from, where he was going to, whether he had been drinking, or whether there was contraband in the car, questions that are frequently asked during motor vehicle stops.

Here, Officer Carletta's belief that defendant's non-functioning tail light was a motor vehicle violation was objectively reasonable. Even if his conclusion amounted to a mistake of law, which we do not now determine, any error was

reasonable given the confusing state of the statutes. Because the Fourth Amendment tolerates objectively reasonable mistakes of law, Heien, supra, 574 U.S. at ___, 135 S. Ct. at 539, 190 L. Ed. 2d at 486, Carletta's stop of defendant's vehicle was permissible.

Our decision does not run afoul of the holding in Novembrino, as defendant contends. In Novembrino, supra, the Court declined to follow the federal good faith exception to the exclusionary rule announced in United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). 105 N.J. at 157-58. The Novembrino Court held that an officer's good faith reliance on a constitutionally deficient search warrant violates Article I, Paragraph 7 of the New Jersey Constitution. Id. at 159. The Court held that police may not circumvent the probable cause requirement even if the error was inadvertent. Id. at 157.

We find Novembrino, which dealt with invalid search warrants and unlawful police activity, inapplicable to the circumstances of this case. Id. at 157-58. Here, the State is not seeking to introduce the fruits of unlawful police conduct because Officer Carletta's stop of defendant's vehicle was lawful, reasonable, done in good faith, non-pretextual, and was based on malfunctioning safety equipment. We reject defendant's suggestion that Novembrino precludes application of the

19

reasonableness standard announced in <u>Heien</u>. Because Carletta's stop was reasonable, defendant's constitutional rights were not violated.

Because we conclude the stop was reasonable, we need not address the State's alternative argument that it was permissible under the community caretaking doctrine.

Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION