176 A.3d 775

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
RYAN SUTHERLAND, DEFENDANT–APPELLANT.

A–14 September Term 2016
077807

Argued October 10, 2017—Decided January 11, 2018

430

Joseph P. Rem, Jr., argued the cause for appellant (Rem Law Group, attorneys; Joseph P. Rem, Jr., of counsel, and Tamra Katcher, of counsel and on the brief).

Claudia Joy Demitro, Deputy Attorney General, argued the cause for respondent (Christopher S. Porrino, Attorney General, attorney; Claudia Joy Demitro, of counsel and on the brief, and Paula C. Jordao, Assistant Morris County Prosecutor, on the brief).

Alexander R. Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Edward L. Barocas, Legal Director, attorney; Alexander R. Shalom, Edward L. Barocas and Jeanne M. LoCicero, on the brief).

Paula C. Jordao, Assistant Prosecutor, submitted a letter brief on behalf of respondent (Fredric M. Knapp, Morris County Prosecutor, attorney).

JUSTICE LaVECCHIA delivered the opinion of the Court.

This Court has acknowledged that a reasonable mistake of fact on the part of a police officer will not render a search or arrest predicated on that mistake unconstitutional. See State v. Handy, 206 N.J. 39, 53–54, 18 A.3d 179 (2011). In this matter, a police officer pulled over a car under the belief that the vehicle was in violation of N.J.S.A. 39:3–61(a) and –66 because one of the vehicle's taillights was not operational. The trial court determined that the officer was mistaken about the law and granted defendant's motion to suppress the fruits of the motor vehicle stop. The Appellate Division reversed. The panel determined that the relevant motor vehicle statutes were ambiguous and that, applying the reasoning of the United States Supreme Court in Heien v. North Carolina, 574 U.S. ——, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014), the officer's stop of defendant's car constituted at most an objectively reasonable mistake of law that should be treated in the same

manner as a mistake of fact. Accordingly, the panel held that the officer's mistake of law did not require suppression of the motor vehicle stop.

We now reverse. The Appellate Division erred in concluding that the holding in Heien is applicable here. Because the motor vehicle statutes pertinent here are not ambiguous, we need not consider importing Heien into the determination of this matter. Thus, we do not address the arguments raised herein that Heien's mistake-of-law analysis is not reconcilable with our state constitutional jurisprudence. The officer's stop of defendant's motor vehicle was not an objectively reasonable mistake of law that gave rise to constitutional reasonable suspicion; the stop was therefore unconstitutional. We remand to the Appellate Division for its consideration of the State's alternative argument, which the panel did not reach, that the stop should be sustained based on the community caretaking doctrine.

I.

A.

At the suppression hearing in this matter, the following facts were adduced. Officer Michael Carletta of the Mount Olive Police Department was the sole witness.

At about 9:00 p.m. on the evening of February 3, 2014, Officer Carletta was on motor vehicle patrol traveling southbound on Route 206. A Toyota Camry passed him traveling northbound. Looking in his rearview mirror, the officer observed that the northbound vehicle appeared to have a malfunctioning taillight. Although the vehicle had four taillights in total, two on each side, and although only one light on the rear passenger side was not illuminated, Officer Carletta believed that the vehicle was in violation of the motor vehicle code. He made a U-turn and began to follow the vehicle. After confirming that one of the vehicle's taillights was not illuminated, he executed a motor vehicle stop.

Officer Carletta testified that, in such situations, it is typical police practice to give the driver a warning rather than a summons.

After stopping and approaching the vehicle, Officer Carletta asked the driver, defendant Ryan Sutherland, for his driver's license, motor vehicle registration, and proof of insurance. Defendant initially stated that he did not have his driver's license with him but then quickly admitted that he did not have a valid driver's license. After obtaining defendant's name and date of birth, Officer Carletta returned to his vehicle to check defendant's information with police dispatch.

Upon confirming that defendant's license was in fact suspended, Officer Carletta issued defendant two summonses: driving with a suspended license in violation of N.J.S.A. 39:3–40, and failure to maintain the vehicle's "lamps" in violation of N.J.S.A. 39:3–66. Officer Carletta explained to defendant that he had been stopped because one of his taillights was not working and that he could no longer drive the vehicle because he had a suspended driver's license. The officer allowed defendant to leave the scene on the condition that his passenger drive the car to its intended destination.

B.

On June 2, 2014, defendant was charged in municipal court with fourth-degree operating a motor vehicle during a period of license suspension in violation of N.J.S.A. 2C:40–26. A Morris County grand jury later indicted defendant and charged him with fourth-degree operating a motor vehicle during a period of license suspension for a second or subsequent driving-while-intoxicated conviction in violation of N.J.S.A. 2C:40–26(b).

Defendant filed a motion to suppress the traffic stop and to dismiss the indictment,[1] arguing that the traffic stop constituted

---

[1] The Appellate Division opinion treats defendant as having filed two separate motions: a motion to suppress the stop and a motion to dismiss the indictment.

an unreasonable seizure because his vehicle had three operable taillights, in compliance with the requirements of N.J.S.A. 39:3–61(a) and –66. The State countered that the stop was lawful because the malfunctioning taillight provided Officer Carletta with reasonable suspicion to stop the vehicle and because the stop was lawful under the "community caretaking" function by which police officers engage in protecting public safety. Officer Carletta testified at the hearing that he had stopped the vehicle both because he believed that any malfunctioning taillight constituted a violation of the statute and because he was engaging in community caretaking by letting defendant know that his vehicle was not in proper working order.

The trial court granted defendant's motion to suppress evidence resulting from the motor vehicle stop, but the court denied his motion to dismiss the indictment on the grounds of faulty instructions provided to the grand jury. On the motor vehicle stop, the trial court agreed with defendant that Officer Carletta's understanding of the maintenance-of-lamps statute had been "incorrect" and that defendant had not violated the statute because he had at least one functioning taillight on each side of the vehicle. Relying heavily on State v. Puzio, 379 N.J. Super. 378, 878 A.2d 857 (App. Div. 2005), as well as an unpublished 2009 Appellate Division decision, the trial court concluded that Officer Carletta's erroneous interpretation of the law—even though it was a "common sense" and "practical" approach to interpreting the statute—could not pass constitutional scrutiny.

The State sought leave to appeal on the grounds that (1) Officer Carletta had reasonable suspicion to conduct a traffic stop; (2) Puzio's continuing vitality was put into question by the United States Supreme Court's decision in Heien, in which the Supreme Court held that objectively reasonable mistakes of law can provide

---

However, it appears from the record that defendant filed one motion to dismiss the indictment for two discrete reasons: (1) because the charge resulted from an unconstitutional stop; and (2) because the prosecutor gave improper instructions to the grand jury.

the reasonable suspicion necessary for a constitutional stop; and (3) the stop was lawful under the community caretaking doctrine. The Appellate Division granted leave to appeal and reversed the trial court in a published opinion. State v. Sutherland, 445 N.J. Super. 358, 138 A.3d 551 (2016).

Relying extensively on Heien, the panel determined that "even if the officer was mistaken that the inoperable tail light constituted a Title 39 violation, he had an objectively reasonable basis for stopping defendant's vehicle." Id. at 360, 138 A.3d 551. In reaching that conclusion, the panel questioned the continuing vitality of Puzio, which had held "that where an officer mistakenly believes that driving conduct constitutes a violation of the law, but in actuality it does not, no objectively reasonable basis exists upon which to justify a vehicle stop." Puzio, 379 N.J. Super. at 383, 878 A.2d 857 (collecting cases).[2] The panel reasoned that Puzio had been decided before Heien and that Heien's "well-reasoned" holding had cast doubt on Puzio's continuing validity. Sutherland, 445 N.J. Super. at 366–67, 138 A.3d 551. The panel went on to conclude that the statute at issue here was ambiguous and that even if Officer Carletta's interpretation of the statute was an objectively reasonable mistake of law, the stop was permissible pursuant to Heien "[b]ecause the Fourth Amendment tolerates objectively reasonable mistakes of law." Id. at 368–70, 138 A.3d 551. The panel's reasoning made it unnecessary to reach the State's argument about the applicability of the community caretaking doctrine. Id. at 371, 138 A.3d 551.

Defendant sought leave to appeal from this Court, which we granted. 228 N.J. 246, 156 A.3d 167 (2016). We also granted the motion of the American Civil Liberties Union of New Jersey (ACLU–NJ) to appear as amicus curiae.

---

[2] The panel below also disagreed with the holding in the unpublished decision referenced by the trial court, which, the panel noted, is unpublished and thus does not constitute precedential authority. Sutherland, 445 N.J. Super. at 365, 138 A.3d 551.

## II.

The parties' arguments are largely those advanced in the proceedings before the trial and appellate courts.

Defendant argues that the Appellate Division's adoption of Heien is at odds with prior New Jersey precedent, which has traditionally provided greater protections under our state analogue to the Fourth Amendment than those provided by the Federal Constitution. Specifically, he argues that Puzio, 379 N.J. Super. at 383, 878 A.2d 857, correctly held that a traffic stop based on an incorrect interpretation of law can never be objectively reasonable. That holding, defendant argues, is a natural extension of this Court's decision in State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987), which held that our State Constitution does not contemplate good faith mistakes by law enforcement as an exception to the exclusionary rule. Defendant also contends that the statutory provisions at issue here were plain and unambiguous and did not apply to his vehicle, undermining any basis for reasonable suspicion. In essence, defendant's argument challenges Officer Carletta's interpretation of those provisions as not reasonable.

The State argues that the Appellate Division correctly held that Officer Carletta's belief that defendant was in violation of the motor vehicle code was objectively reasonable and provided him with reasonable suspicion to stop defendant's vehicle. Relying on Heien, the State posits that just as we have held that reasonable mistakes of fact can pass constitutional scrutiny, so too should we hold that reasonable mistakes of law do not run afoul of our constitution. Such a result is not inconsistent with Puzio, the State argues, because Puzio involved an objectively unreasonable mistake of law, whereas here, Officer Carletta was forced to interpret a confusing and outdated set of statutes ambiguous enough to be open to differing and equally reasonable interpretations. Additionally, the State maintains that it preserved its argument that Officer Carletta had lawful authority to stop defendant's vehicle based on the community caretaking doctrine, which provides police

with the power to ensure the safety and welfare of the public independent of their law enforcement objectives.

Amicus curiae ACLU-NJ argues that the statutes at issue here are not ambiguous and that the rule of lenity requires strict construction of those statutes in defendant's favor. ACLU-NJ further argues that a stop based on a police officer's misunderstanding or ignorance of the law can and should be differentiated from mistakes of fact, and that such ignorance or misunderstanding of the law must always be unreasonable and thus unconstitutional under our Article I, Paragraph 7 jurisprudence. Like defendant, ACLU-NJ maintains that that conclusion flows naturally from state constitutional case law, most specifically from Novembrino. Heien, the ACLU-NJ argues, is inconsistent with that jurisprudence and thus should not be adopted by this Court.

### III.

### A.

■ Under previous case law in this state, a police officer's objectively reasonable mistake of fact does not render a search or arrest unconstitutional. Consistent with federal jurisprudence, we have held that Article I, Paragraph 7 of the New Jersey Constitution provides "room ... for some mistakes [by police]." Handy, 206 N.J. at 54, 18 A.3d 179 (second alteration in original) (quoting Illinois v. Rodriguez, 497 U.S. 177, 186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)). However, that principle applies only when "the police ... behave[ ] reasonably." Ibid.; see also State v. Green, 318 N.J. Super. 346, 352–53, 723 A.2d 1012 (App. Div. 1999) (holding reasonable but mistaken belief leading to arrest did not warrant suppression).

In Handy, a police dispatcher, erroneously relying on a record of a warrant containing a name and date of birth that did not match the defendant's reported information, advised a police officer to execute that warrant without taking necessary steps to clarify discrepancies. 206 N.J. at 41–42, 18 A.3d 179. Our Court

concluded that the dispatcher's conduct was not objectively reasonable. Id. at 54, 18 A.3d 179. Therefore, we determined that the arrest violated the defendant's federal and state constitutional rights, and we suppressed the evidence found during the search incident to the arrest. Id. at 42, 18 A.3d 179.

The facts in Handy led us to a different conclusion than the mistake of fact in State v. Green, in which the error was determined to be objectively reasonable. In Green, which we cited approvingly in Handy, the Appellate Division upheld an arrest and search of defendant Green, where Green closely matched the description of another man named Lovett—for whom the warrant was issued—and where the police encountered Green outside Lovett's residence. Green, 318 N.J. Super. at 352–53, 723 A.2d 1012. In those circumstances the Appellate Division rightly concluded that the arrest was premised on an objectively reasonable mistake of fact and was thus lawful. Ibid.

Until the Appellate Division decision in this case, the jurisprudence of our state appellate courts had not held that reasonable mistakes of law would pass constitutional muster. In fact, courts had reached the opposite conclusion. See Puzio, 379 N.J. Super. at 382–83, 878 A.2d 857.

In Puzio, an officer stopped a moving vehicle with commercial license plates, believing the driver was operating it in violation of N.J.S.A. 39:4-46(a) because the vehicle had no placard on the right side of the vehicle displaying the name and address of its business. Id. at 380, 878 A.2d 857. The Appellate Division determined as a matter of law that the stop was in error because the statute relied on by the officer plainly excluded "passenger vehicles," like the one driven by the defendant, from the "placard" requirement. Id. at 382–84, 878 A.2d 857.

Importantly, the Puzio decision noted "a clear distinction between the present situation and those presented in cases where the officer correctly understands the statute but arguably misinterprets the facts concerning whether a vehicle, or operator, has violated the statute." Id. at 382, 878 A.2d 857. In explaining its

reasoning, the panel stated that "[i]f officers were permitted to stop vehicles where it is objectively determined that there is no legal basis for their action, 'the potential for abuse of traffic infractions as pretext for effecting stops seems boundless and the costs to privacy rights excessive.'" Id. at 384, 878 A.2d 857 (quoting United States v. Lopez–Valdez, 178 F.3d 282, 289 (5th Cir. 1999)). The panel also viewed the creation of an exception for a mistake of law as inconsistent with the exclusionary rule because "it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey." Ibid. (quoting United States v. Lopez–Soto, 205 F.3d 1101, 1106 (9th Cir. 2000)).

Another mistake-of-fact case—the State's assertions to the contrary notwithstanding—is State v. Williamson, 138 N.J. 302, 650 A.2d 348 (1994). Williamson dealt with a police officer's reasonable suspicion that a motorist had "affected traffic" so as to be in violation of the motor vehicle code by failing to use a turn signal. Id. at 303–04, 650 A.2d 348. The officer was required to make a judgment that involved interpreting facts, namely whether the motorist had actually affected traffic; there was no mistake about what the law meant. See id. at 304, 650 A.2d 348. We held that "the State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense." Ibid. At its core, Williamson involved a factual dispute: whether the officer could have an objectively reasonable belief, even if mistaken, that the defendant's driving behavior "affected traffic," to justify the stop. See also State v. Locurto, 157 N.J. 463, 470, 724 A.2d 234 (1999) (noting that State is not required to prove that motor vehicle violation occurred in order to meet standard of reasonable suspicion).

Thus, at the time of the Appellate Division's decision here, neither this Court nor the Appellate Division had authorized reliance on a reasonable but mistaken understanding of the law to support a search or arrest. In the appellate judgment under review, the panel relied on, as persuasive, the intervening decision

of the United States Supreme Court in Heien to support its holding. We turn therefore to that decision in setting forth the background to this appeal.

B.

In Heien, the United States Supreme Court considered a police officer's reasonable but erroneous interpretation of a motor vehicle statute. In that case, a North Carolina Sheriff's Officer observed a vehicle traveling along the highway with a malfunctioning brake light. Heien, 135 S.Ct. at 534. Believing the faulty brake light to be in violation of the state's motor vehicle code, the officer executed a traffic stop. Ibid. During the stop, the officer received permission to search the vehicle and discovered illegal drugs in a duffel bag. Ibid.

The defendant sought to suppress the evidence uncovered during the search, contending that the stop had violated his rights under the Fourth Amendment. Id. at 535. The trial court denied the suppression motion, but the North Carolina Court of Appeals reversed, holding that the initial stop was invalid "because driving with only one working brake light was not actually a violation of North Carolina law." Ibid. The State appealed, and the North Carolina Supreme Court reversed, holding that the officer's interpretation of the motor vehicle code—even if incorrect—was not unreasonable and thus not a violation of the Fourth Amendment. Ibid.

The Supreme Court granted certiorari. Chief Justice Roberts's majority opinion noted that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Id. at 536 (quoting Riley v. California, 573 U.S. ——, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014)). After explaining that "[t]o be reasonable is not to be perfect," and that the Fourth Amendment allows for reasonable mistakes of fact, the Chief Justice went on to explain that the Fourth Amendment reasonableness inquiry applies to mistakes of law just as it applies to mistakes of fact:

[R]easonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion [than mistakes of fact]. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.
[Ibid.]

Based on the language of the North Carolina statute involved in Heien, Chief Justice Roberts concluded that the officer's error of law was reasonable and thus provided the officer with reasonable suspicion to justify the traffic stop. Id. at 540. Importantly, Justice Kagan, joined by Justice Ginsburg, wrote a concurrence that has garnered support with states that have chosen to follow the Heien approach in their own search and seizure analyses.

Justice Kagan's concurrence contained several important caveats. Critical to her agreement with the majority was her belief that erroneous interpretations of the law will pass Fourth Amendment scrutiny only when the law at issue is " 'so doubtful in construction' that a reasonable judge could agree with the officer's view." Id. at 541 (Kagan, J., concurring) (quoting The Friendship, 9 F. Cas. 825, 826 (No. 5,125) (C.C.D. Mass. 1812)). Thus, "[i]f the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not." Ibid. Such cases must necessarily involve a "really difficult" or "very hard question of statutory interpretation" and will thus be "exceedingly rare." Ibid.

A number of states have subsequently adopted Heien's holding. See, e.g., Sevilla–Carcamo v. State, 335 Ga.App. 788, 783 S.E.2d 150, 153 n.12 (2016) (dicta); Williams v. State, 28 N.E.3d 293, 294–95 (Ind. Ct. App. 2015); People v. Guthrie, 25 N.Y.3d 130, 30 N.E.3d 880, 886–88 (2015); State v. Hirschkorn, 881 N.W.2d 244, 248–49 (N.D. 2016); State v. Lerma, 884 N.W.2d 749, 750–53 (S.D. 2016). However, some of those states had already developed a jurisprudence prior to Heien allowing for reasonable mistakes of

law on the part of police officers. See, e.g., Sevilla–Carcamo, 783 S.E.2d at 153 n.12 (noting that Heien is in accord with established Georgia case law); State v. Wright, 791 N.W.2d 791, 796–99 (S.D. 2010) (suggesting that objectively reasonable mistake of law can provide basis for constitutional traffic stop).[3]

Importantly, however, a number of states have either followed or acknowledged Justice Kagan's narrow interpretation of an objectively reasonable mistake of law when deciding similar issues under the rubric of Heien's analysis. See State v. Stoll, 239 Ariz. 292, 370 P.3d 1130, 1134 (App. 2016) (citing Justice Kagan's concurrence for proposition that statute must be "genuinely ambiguous" and require "hard interpretive work" to find that officer has made reasonable mistake); People v. Gaytan, 392 Ill.Dec. 333, 32 N.E.3d 641, 652 (2015) (same); State v. Eldridge, 790 S.E.2d 740, 743–44 (N.C. Ct. App. 2016) (same); State v. Hurley, 198 Vt. 552, 117 A.3d 433, 441 (2015) (noting Justice Kagan's indication that "the bar is high in cases in which a stop is predicated on a mistake of law"); State v. Houghton, 364 Wis.2d 234, 868 N.W.2d 143, 158–60 (2015) (noting Justice Kagan's view that objectively reasonable mistakes of law will be "exceedingly rare"); see also State v. Dopslaf, 356 P.3d 559, 563–64 (N.M. Ct. App. 2015) (citing Justice Kagan's concurrence as support for proposition that police officer's potential mistake of law was reasonable).

In this state, we have had only one prior occasion to consider Heien; that opportunity presented itself in State v. Scriven, 226 N.J. 20, 140 A.3d 535 (2016). However, we ultimately did not reach

---

[3] Some states have changed their views entirely in light of Heien. Compare Williams, 28 N.E.3d at 293–95 (Indiana Court of Appeals reversing on rehearing and following Heien's holding that reasonable mistakes of law can provide reasonable suspicion for traffic stop), with Gunn v. State, 956 N.E.2d 136, 141 (Ind. Ct. App. 2011) (noting party's acknowledgement of "Indiana decisions determining that an officer's mistake of law can never be reasonable"); see also Guthrie, 30 N.E.3d at 885 (noting prior appellate precedent in New York that "mistake of law cannot justify a traffic stop").

the question of whether to adopt Heien and find that an objectively reasonable mistake of law could support reasonable suspicion for a constitutional police stop. Id. at 36, 140 A.3d 535. Instead, we held that the officer's mistake of law in that case was not objectively reasonable, see ibid., and thus did not qualify as the type of "rare" case that involves an objectively reasonable mistake of law.

With that background in mind, we turn to the motor vehicle statutes that, the State contends, give rise to an objectively reasonable mistake of law in this matter.

## IV.

■ Defendant's traffic stop was premised on perceived violations of two statutes.

N.J.S.A. 39:3–61(a), relating to the types of "lamps and reflectors" required on certain motor vehicles, provides in relevant part:

> Every motor vehicle other than a motor cycle and other than a motor-drawn vehicle shall be equipped on the front with at least two headlamps, an equal number at each side, and with two turn signals, one on each side; and on the rear with two tail lamps, two or more stop lamps, as prescribed by section 2 of L. 2013, c. 230 ([N.J.S.A.] 39:3–66.3), two turn signals, and two reflectors, one of each at each side; except that a passenger vehicle manufactured before July 2, 1954, and registered in this State may be equipped with one stop lamp, one reflector, and one tail lamp and is not required to be equipped with turn signals.
>
> [ (emphasis added).]

N.J.S.A. 39:3–66, which specifies the proper maintenance of such lamps and reflectors, provides:

> All lamps, reflectors and other illuminating devices required by this article shall be kept clean and in good working order and, as far as practicable, shall be mounted in such a manner as to reduce the likelihood of their being obscured by mud or dust thrown up by the wheels.
>
> [ (emphasis added).]

■ When interpreting a statute we look first, and foremost, to its actual language and ascribe to its words their ordinary meaning. Mason v. City of Hoboken, 196 N.J. 51, 68, 951 A.2d 1017 (2008) (citing DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005)). "If in ascribing to those words their 'ordinary meaning

and significance,' the Legislators' intent is self-evident, we need not search further for guidance." Simon v. Cronecker, 189 N.J. 304, 332, 915 A.2d 489 (2007) (quoting DiProspero, 183 N.J. at 492, 874 A.2d 1039).

 The statutes read together require that a motor vehicle only have two working rear lamps, with at least one working lamp on each side. See N.J.S.A. 39:3–61(a); N.J.S.A. 39:3–66. Additionally, N.J.S.A. 39:3–66 mandates that the lamps "required by this article" must be kept in good working order. Thus, if there is only the minimum one taillight on each side of a vehicle and either of those taillights is not working, an officer can lawfully stop the vehicle and issue a citation for failure to maintain lamps. When a vehicle has more than the minimum of two rear taillights, for example the vehicle has two taillights on each side, an officer can lawfully stop the vehicle when one side's taillights are both out, even though the vehicle has two or more taillights illuminated on the other side. In other words, the statutes require one working taillight on each side of a vehicle. Thus, if a vehicle has two taillights on each side of the vehicle—more than the law requires—and one of those multiple taillights on one side is not working, a violation of N.J.S.A. 39:3–61(a) and –66, as was assumed and charged here, has not occurred.

 We find the language unambiguous and therefore need not resort to legislative history. Were that history to be examined on the relevant question, we would note, as the State points out, that the Legislature did at one point begin consideration of an amendment; that amendment would have worked a different interpretation of existing law as we read it, and as it was applied in a prior unpublished decision that received legislative attention. As originally introduced at the outset of the 2012 Legislative Session, Assembly Bill 354 would have amended N.J.S.A. 39:3–66 and N.J.S.A. 39:3–61 to establish that "an equipment violation [will be found] if any lighting device installed on a vehicle is not in working order." Those proposed amendments were never adopted by the Legislature, as the Appellate Division noted in its opinion. Suther-

land, 445 N.J. Super. at 367 n.3, 138 A.3d 551. We do not ascribe much weight to legislative inaction but note merely that there has been no legislation to alter prior application of the pertinent statutes. Cf. State v. Smith, 197 N.J. 325, 335, 963 A.2d 281 (2009).

Finally, we reject the argument that N.J.S.A. 39:3–48, which addresses visibility specifications for vehicle lights, can inject ambiguity into the clear wording of the statutes at issue here. Nor does the permissive repair provision in N.J.S.A. 39:3–61(l)—which does not have applicability in the present situation or in most modern malfunctioning-taillight circumstances—convert the interpretative question before us into one that rises to the level of difficulty envisioned as the "rare" case of an objectively reasonable misunderstanding of the law. See Heien, 135 S.Ct. at 541 (noting that such cases must necessarily involve "very hard question[s] of statutory interpretation").

Putting the statutes in question to rigorous analysis, we fail to find them unclear, as the State suggests. We find that the officer's erroneous application of the functioning taillight requirement was not an objectively reasonable mistake of law. This case does not present a basis for considering the application of Heien and the Appellate Division erred in reaching that determination based on the error here. Simply put, this was not a good stop. Even Heien could not save it, were we ever to consider adopting such an approach for the truly rare case that rose to the level of an objectively reasonable mistake of law. But this was not that case. The judgment of the Appellate Division, premised on an application of Heien to the stop in this matter, is reversed.

That, however, does not end the matter.

## V.

■ The State also asserted community caretaking as an alternative basis to support the stop. It is a rule that allows police officers to conduct warrantless searches where necessary to "preserve life or property." State v. Edmonds, 211 N.J. 117, 141–42, 47 A.3d 737 (2012) (summarizing community caretaking rule). The

rationale for the community caretaking rule is that searches made pursuant to the rule are "divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Id. at 142, 47 A.3d 737 (quoting Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)).

That doctrine was raised at the suppression hearing and there was testimony from the officer on the point. Although raised on appeal, the Appellate Division did not reach the argument in light of the manner in which it resolved the case. Accordingly, a remand is appropriate to allow the Appellate Division to address the unresolved argument advanced by the State.

## VI.

The judgment of the Appellate Division is reversed. We remand the matter for further proceedings in the Appellate Division.

CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ–VINA, SOLOMON, AND TIMPONE join in JUSTICE LaVECCHIA's opinion.