**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0896-18T4

ROBERT BRYANT,

     Plaintiff-Appellant,

v.

CAMDEN COUNTY POLICE
DEPARTMENT,

     Defendant,

and

OFFICER JOSE GONZALEZ,
OFFICER JACOB LEVY, and
OFFICER KENNETH EGAN,

     Defendants-Respondents.

_____

Argued February 10, 2020 – Decided July 21, 2020

Before Judges Sabatino, Sumners and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-3505-15.

Justin T. Loughry argued for appellant (Loughry and Lindsay, attorneys; Justin T. Loughry, on the briefs).

William F. Cook argued for respondents (Brown & Connery, LLP, attorneys; William F. Cook, on the brief).

PER CURIAM

This civil rights litigation commenced with plaintiff Robert Bryant's complaint alleging false arrest, unreasonable search, and suppression of his freedom of expression under the New Jersey Constitution against defendants Camden County Police Department (CCPD) and its officer, Jose Gonzalez. Bryant later amended his complaint to include claims under the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2, and the New Jersey Constitution against CCPD officers Jacob Levy and Kenneth Egan for separate acts of harassment, discrimination, and detention in retaliation for his complaint against Gonzalez and the CCPD, and because he is African-American.

In his appeal, Bryant challenges the trial judge's: (1) September 1, 2017 order granting summary judgment dismissal of his complaint against Levy and Egan; (2) September 7, 2018 decision denying his Rule 4:40-1 motion for a directed verdict; (3) October 26, 2018 order denying his motion for a new trial after a jury determined he had no cause of action against Gonzalez; and (4) final judgment order of November 2, 2018, in favor of Gonzalez. Specifically, Bryant argues the judge erred in finding as a matter of law Egan and Levy's conduct did

A-0896-18T4
**Error! Reference source not found.**

not amount to a violation of our state constitution. As for Gonzalez, Bryant argues based on the facts presented at trial, there was no legal basis for Gonzalez to arrest him, therefore the judge erred in denying him a directed verdict and a new trial. For the reasons set forth below, we affirm the grant of summary judgment to Levy and Egan. However, we reverse the order denying plaintiff's motion for a new trial and order that liability be entered against Gonzalez, and remand for a damages-only trial concerning the alleged injury inflicted by that sole defendant.

I.

To give context to the issues on appeal, we begin with a discussion of the September 2018 trial testimony about the confrontation leading to Gonzalez's arrest of Bryant. Bryant filed suit on September 15, 2015, later amended on October 19, 2016, alleging Gonzalez and the CCPD violated his state constitutional rights under N.J. Const. art. I, ¶ 7 to be free from unreasonable search and seizure, and false arrest actionable under N.J.S.A. 10:6-2(c).[1] We

---

[1] N.J.S.A. 10:6-2(c) provides in pertinent part:

> Any person who has been deprived of . . . any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise

then discuss Bryant's interactions with Levy and Egan, which both occurred after Bryant's arrest and the filing of his initial complaint. His claims against Levy and Egan were set forth in his October 19, 2016 amended complaint.

A. <u>Gonzalez's Arrest of Bryant</u>

Bryant testified, and called his father, Robert Bryant, Sr., and Gonzalez to testify regarding the arrest. Bryant stated he was standing at his street vendor's table selling merchandise at a strip mall in Camden on the afternoon of September 18, 2013, when Gonzalez and his partner drove into the mall's parking lot. Bryant stated he sometimes sat in his father's red Ford Taurus in the parking lot but could not remember if he was doing so just before the officers' arrival. According to Bryant, after Gonzalez confronted him and patted him down, Bryant produced his identification upon request. Gonzalez then questioned him about a shooting incident that occurred six days earlier, which he denied knowing anything about.

> or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

A-0896-18T4
**Error! Reference source not found.**

Bryant testified that after Gonzalez made him sit on the curb, Gonzalez continued to question him about the shooting, which he continually denied any knowledge of, and he eventually asked Gonzalez if he was being detained. Bryant stated he was then arrested and charged with obstruction. The obstruction charge was downgraded to municipal court about a week later. The charge was dismissed in February 2014, but the record provided to us does not reveal why.

The senior Bryant corroborated his son's testimony that he was standing near his street vendor's table when Gonzalez approached him and asked for his identification, which he gave to Gonzalez. The father stated Gonzalez inquired about the red Taurus and he replied the car was his. After his son was made to sit on the curb, the father testified:

> Then I heard . . . the officer tell [my son] you know about this shooting. And my son kept saying I don't know nothing about no shooting. And then a few seconds later, . . . I can't hear everything precisely, but I'm hearing, you know, parts of it.
>
> . . . .
>
> And then a few seconds later I heard my son saying am I being detained. And when he said that, that's when the officer pulled my son up from the curb and escorted [him], not handcuffed, and put him in a patrol car and they took him downtown.

Bryant next called Gonzalez as a witness to authenticate a report the officer wrote regarding the incident. The following pertinent part of the report was read into evidence:

> As we approached, Bryant exited the vehicle clutching his waistband and began to walk away from it. I then approached Bryant and smelled a strong odor of burnt marijuana. I asked him to raise his hands. I began to pat him down and then asked him to have a seat on the curb so that I could ask him a few questions. Bryant was very uncooperative and refused to answer any questions after I explained to him that we were investigating a shooting . . . .
>
> He eventually gave me his identification after I asked him numerous times. Bryant was advised that the vehicle he exited matched the description of the vehicle used in the said shooting. He stated he did not care and asked why he was being harassed. I again asked him about the vehicle in question and I also asked him about the odor of marijuana.
>
> He again stated he was not going to answer any questions and asked me for my name. I told Bryant my name and rank, as well as my badge number, and advised him that if he refused to answer any of my questions, he would be placed under arrest for obstruction. He again refused and was subsequently placed under arrest.

Gonzalez testified in his own defense. He stated he and another CCPD officer were investigating a shooting involving a school bus which had taken

place six days earlier. They were in an unmarked police vehicle driving around ten to twelve blocks from the scene of the shooting, when they saw Bryant sitting in the driver's seat of a red Ford Taurus "not [being] operated," but parked in the parking lot of a strip mall. Gonzalez testified they did not observe any motor vehicle violations on the Taurus prior to or after they pulled into the parking lot.

Gonzalez testified when he got out of his vehicle Bryant was getting out of the Taurus at the same time, and he thought "I'm going to conduct a car stop . . . and see what's going on with the car . . . ." The car matched a general description of a car involved in the shooting, a red or burgundy Ford Taurus or Mercury Sable, which have similar sedan body types.[2] The officers did not have a description of the alleged shooters. Gonzalez stated the area of the encounter was "infamous for like the amount of shootings and homicides" so when he couldn't see Bryant's hands, he told him to put them up, and frisked him for weapons. Upon approaching Bryant, he testified that he smelled marijuana. After frisking Bryant, Gonzalez told him about the shooting involving a school bus, which he stated had taken place six days earlier.

---

[2] Further police investigation determined the car involved in the shooting was a Mercury Sable.

A-0896-18T4
**Error! Reference source not found.**

Gonzalez testified he then asked Bryant his name, but he refused, stating he did not need to answer any questions. After directing Bryant to sit on the curb, Gonzalez stated he continued to question him and advised him if he did not identify himself, he could be arrested for obstruction. After Bryant again refused to identify himself, Gonzalez arrested him. Gonzalez stated it was only after Bryant was being placed in the police car that he offered his identification. Gonzalez stated because Bryant had already been advised he was under arrest; he was transported to the police station. However, Gonzalez conceded on cross-examination, that in his deposition testimony, he stated Bryant had never identified himself, even after being placed in the police car. Gonzalez charged Bryant with obstructing a shooting investigation, an "independently unlawful act" under N.J.S.A. 2C:29-1(a) (the obstruction statute).[3]

---

[3] N.J.S.A. 2C:29-1 provides:

> a. A person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act. This section does not apply to failure to perform a legal duty other than an official duty, or any other means of avoiding

Gonzalez admitted that despite smelling marijuana on Bryant, he did not enter the Taurus to retrieve a registration card or insurance card, or search for drugs. In addition, he acknowledged the criminal complaint he wrote against Bryant made no mention of marijuana odor emanating from Bryant or Bryant refusing to identify himself. Gonzalez stated, except for not providing his identification, Bryant complied with his orders and made no attempt to flee questioning.

John Ryan, a retired police officer, police trainer, and lawyer, testified for Gonzalez, as an expert on police practices and procedures. Ryan opined Gonzalez had reasonable articulable suspicion to conduct an investigatory Terry[4] stop of Bryant based on the following facts:

- Gonzalez saw a car that fit the description of one used in "a very serious shooting."

- The car was ten to twelve blocks from the scene of the shooting, so it was "in close proximity."

- The car was in a high crime area.

_____

compliance with law without affirmative interference with governmental functions.

[(Emphasis added).]

[4] Terry v. Ohio, 392 U.S. 1 (1968).

- The car was occupied.

- The occupant exited the car when Gonzalez arrived.

Ryan stated Gonzalez's frisk of Bryant was reasonable because Gonzalez saw Bryant touch his waistband as Gonzalez approached.

Ryan testified that because Bryant was in a car, the encounter was technically a car stop, and that car stops aren't only limited to motor vehicle offenses, but if someone robs a bank, they can still be stopped. He stated in many states if someone doesn't identify themselves upon request of a police officer, that alone warrants an arrest. He did not say New Jersey was such a state. He also noted the odor of marijuana provided Gonzalez with probable cause to arrest Bryant. Finally, Ryan, without any factual or legal support, testified that when an "officer's time is interfered with," it constitutes obstruction.

B. Bryant and Levy

In the early afternoon of October 30, 2015, about six weeks after Bryant filed suit against Gonzalez and the CCPD, he had moved his business into one of the storefronts in the same strip mall where Gonzalez had arrested him two years earlier, and was unloading merchandise from his van outside of his store when Levy approached him. According to Bryant's deposition testimony, Levy

A-0896-18T4

**Error! Reference source not found.**

asked him what he was doing and requested his name, social security number, and birth date, which he provided. In addition, Bryant testified that Levy asked him if he was intimidated, to which he replied he had work to do and asked Levy if he was free to go. Bryant stated Levy replied "no, I'm not done with you yet." Bryant stated Levy left without incident after finishing recording his personal information.

Levy explained in his community information report and deposition testimony he was directed to conduct business checks at the location because there had been several recent robberies. The business checks were for the benefit of business owners so the police could contact them in case of emergencies. When visiting Bryant's business, Levy testified he saw African-American men in front of the store who were known to sell drugs, and who would follow apparent drug buyers inside the store for a short period and leave. He also noted his belief that the merchandise in the store may have been unlicensed or stolen. Levy exited the store and approached Bryant who identified himself as the store owner. Levy requested his contact information, and once it was provided, Levy returned it to Bryant and left.

C. Bryant and Egan

A-0896-18T4

**Error! Reference source not found.**

On May 5, 2016, about eight months after he filed suit against Gonzalez and the CCPD, Bryant claimed in his deposition testimony he was tending to his business, this time as a vendor with a foldout table, when Egan got out of a patrol car and requested to see his vending license. Bryant handed over his license, to which Egan told him the license was "bootleg" as the City of Camden had recently changed the design of its vendor's licenses.[5] Egan then issued him a citation for having a fake license and advised him to "pack [his] shit up and get out of [t]here." Bryant conceded he did not have his vendor's license displayed or posted in violation of the City of Camden ordinance 397-5 (the ordinance). The citation was later dismissed for reasons that are not stated in the record before us.

Egan testified at his deposition that the identification Bryant proffered wasn't a vending license, and Bryant agreed with him after hearing his explanation. Egan described the license he was given as "an off yellow piece of paper that was laminated with [Bryant's] photo on it" with "his name on it."

---

[5] In his complaint Bryant avers the license was rejected by Egan because the officer falsely stated it was required to have an address on it. In his merits brief, Bryant states Egan rejected the license because it appeared different than what Egan was accustomed to seeing.

A-0896-18T4

**Error! Reference source not found.**

Egan was not questioned about the license identified during his deposition, and the document he described was not provided or addressed by either party. Egan stated he issued Bryant a citation and advised him that if he had a vendor's license, he could show it to the court and the citation would be dismissed.

II.

Bryant's claims against all three officers involve warrantless encounters, thus we find instructive our decision in State v. Williams, 381 N.J. Super. 572, (App. Div. 2005). There, we succinctly stated:

> The three constitutionally permissible forms of warrantless police encounters with citizens are (1) the encounter occasioned by probable cause, (2) the investigatory stop, and (3) the field inquiry. State v. Pineiro, 181 N.J. 13, 20 (2004).
>
> The encounter based upon probable cause requires "a well-grounded suspicion." State v. Sullivan, 169 N.J. 204, 211 (2001). Probable cause "exists where the facts and circumstances" based upon "reasonably trustworthy information" is sufficient "to warrant a [person] of reasonable caution" to believe that "an offense has been or is being committed." Schneider v. Simonini, 163 N.J. 336, 361 (2000) . . . .
>
> The investigatory stop, sometimes referred to as a Terry stop, is valid if "based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity." State v. Nishina, 175 N.J. 502, 510–11 (2003). The suspicion "need not rise to the 'probable

cause necessary to justify an arrest.'" Pineiro, . . . 181 N.J. at 20 (quoting Nishina, . . . 175 N.J. at 511).

The field inquiry is "the least intrusive" constitutionally permissible encounter. Pineiro, . . . 181 N.J. at 20. It occurs "when a police officer approaches an individual and asks 'if [the person] is willing to answer some questions,'" and is permissible "so long as the questions [are] not harassing, overbearing, or accusatory in nature." Ibid. (quoting Nishina, . . . 175 N.J. at 510). When subjected to a field inquiry, a person "need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." State v. Maryland, 167 N.J. 471, 483 (2001) (quoting Florida v. Royer, 460 U.S. 491, 497–98 (1983)). For that reason, such an encounter is only constitutionally legitimate if the individual's movement or ability to leave are not restricted.

[381 N.J. Super. at 581-82 (internal citation omitted) (alterations in original).]

When a law enforcement officer has probable cause to arrest, or reasonably believes there is probable cause to arrest, it is a critical issue because proof of probable cause is an absolute defense to a claim of false arrest under 42 U.S.C.A. § 1983. Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (2000); Bayer v. Twp. of Union, 414 N.J. Super. 238, 262 (App. Div. 2010). The same defense applies to Bryant's NJCRA claims. See, e.g., Morillo v. Torres, 222 N.J. 104, 116 (2015) (noting that "[F]or purposes of analyzing the qualified-immunity defense" the analysis under both 42 U.S.C.A. § 1983 and the NJCRA

"is the same"). "In determining whether probable cause existed, a court should consider the totality of the circumstances, including the police officer's common and specialized experience." Bayer, 414 N.J. Super. at 263 (internal quotation marks and citations omitted).

"[I]t is irrelevant to the probable cause analysis what crime a suspect is eventually charged with," if the objective facts support probable cause to arrest for any offense. Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005); see also Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994). "The relevant inquiry in determining objective reasonableness is whether a reasonable officer, in view of well-established law and the information the officers possessed, could have believed that probable cause existed to arrest plaintiff." Connor v. Powell, 162 N.J. 397, 411 (2000).

In DelaCruz v. Borough of Hillsdale, 365 N.J. Super. 127, 149-51 (App. Div. 2004), we held "a plaintiff asserting a false arrest [or] false imprisonment claim need only prove that he or she was wrongfully deprived of freedom." We elaborated:

> False arrest and false imprisonment are different names for the same tort. Price v. Phillips, 90 N.J. Super. 480, 484 (App. Div. 1966). The tort of false imprisonment is complete when one unlawfully detains another. "'The gist of false imprisonment is mere unlawful detention

without more.'" Lakutis v. Greenwood, 9 N.J. 101, 106 (1952) (quoting Altana v. McCabe, 132 N.J.L. 12, 13 (Sup. Ct. 1944)). False imprisonment is a civil wrong similar to assault and battery in that "[it] consists in imposing, by force or threats, unlawful restraint upon a man's freedom of locomotion." Earl v. Winne, . . . 14 N.J. [199], 128 [(1953)]. Police officers and other public officials may be held liable for false imprisonment where they have acted outside their authority. Lakutis, 9 N.J. at 106.

[DelaCruz, 365 N.J. Super. at 149-50 (alterations in original) (citations omitted).]

Police officers who mistakenly arrest someone are normally afforded the affirmative defense of qualified immunity to shield themselves "from personal liability for discretionary actions taken in the course of their public responsibilities." Brown v. State, 230 N.J. 84, 97-98 (2017). Therefore, an officer accused of false arrest can assert qualified immunity to defend himself against an N.J.S.A. 10:6-2 claim if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 98 (quoting Morillo, 222 N.J. at 116).

To ascertain whether a governmental official . . . is entitled to qualified immunity requires inquiries into whether: (1) the facts, "[t]aken in the light most favorable to the party asserting the injury[ ] . . . show the officer's conduct violated a constitutional right"; and (2) that constitutional "right was clearly established" at the time that defendant acted.

[Ibid. (alterations in original).]

Put another way, an officer must show: (1) that he acted with probable cause; and (2) if no probable cause existed, a reasonable officer could have believed in its existence. DelaCruz, 365 N.J. Super. at 142 (citing Schneider v. Simonini, 163 N.J. 336, 355 (2000)). Qualified immunity, however, does not shield law enforcement officers who are "'plainly incompetent or those who knowingly violate the law.'" Connor, 162 N.J. at 409 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

## III.

We now address Bryant's contention the trial judge erred in not granting his Rule 4:40-1 motion for a directed verdict and allowing the jury to consider that his conduct of not showing Gonzalez his identification constituted a violation of the obstruction statute.

We review de novo a trial judge's decision on a motion for a directed verdict made pursuant to Rule 4:40-1. Boyle v. Ford Motor Co., 399 N.J. Super. 18, 40 (App. Div. 2008). Like the trial judge, we "must accept as true all the evidence which supports the position of the non-moving party, according him or her the benefit of all legitimate inferences." RSB Lab. Servs., Inc. v. BSI, Corp.,

368 N.J. Super. 540, 555 (App. Div. 2004). If reasonable minds could differ as to which party should prevail, the motion for directed verdict must be denied. Monaco v. Hartz Mountain Corp., 178 N.J. 401, 413 (2004).

After Gonzalez rested, Bryant's counsel moved for a directed verdict on liability. Counsel argued there were no facts showing Bryant was a driver or operator of his father's car, and therefore there was no way the jury could find a motor vehicle stop had taken place, which would have required him to provide his identification to Gonzalez. The judge denied the motion, stating the jury could "draw inferences of operation [by Bryant], which would lead this into the realm of a motor vehicle stop," which allowed Gonzalez to demand Bryant's identification.

At the close of trial, the first two questions the jury was charged with determining were:

> 1. Has the plaintiff, Robert Bryant, Jr., proven by a preponderance of the evidence that he did provide his name or identification to the defendant, Jose Gonzalez, before the time of his arrest on September 18, 2017?
>
> 2. Did the defendant, Jose Gonzalez, have an objectively reasonable belief that the plaintiff, Robert Bryant, Jr. committed a violation of [the obstruction statute?]

The jury returned a unanimous verdict finding Bryant did not provide his identification to Gonzalez before he was placed under arrest and Gonzalez's belief that Bryant had violated the obstruction statute was objectively reasonable. Thus, the jury did not have to determine the remaining questions of whether Bryant's constitutional rights were violated or the amount of damages he was entitled to due to such a violation.

Following the jury's verdict, Bryant moved for a new trial, arguing the dispositive issue in the case was whether he had a legal obligation to identify himself, and there was no evidence presented at the trial which indicated he had that duty. The judge denied the motion.

Before us, Bryant contends he was entitled to a judgment on liability against Gonzalez. He asserts the obstruction statute did not apply to him because his failure to provide his identification was not an illegal act given the lack of proof he was a driver or operator of the parked car Gonzalez claimed to have seen him get out of. Without proof he drove or had the intent to operate the car,

**Error! Reference source not found.**

Bryant maintains the judge erred in finding there was an inference of operation and his motion for a directed verdict should have been granted.[6]

Further, Bryant, relying on State v. Davis, 104 N.J. 490, 505-07 (1986), argues Gonzalez's assertion that he was properly stopped to question him because he was sitting in a legally parked car which was a similar model and color of a car seen fleeing from the scene of a shooting six days earlier "would never suffice to give a reasonable articulable suspicion . . . , without more, . . . [to] justify a police 'stop' or seizure." Thus, Bryant "urges this [c]ourt to enter judgment for liability in [his] favor, leaving the question of damages for further proceedings."

While qualified immunity is a question of law, normally settled before trial, in cases involving disputes of fact, the parties may present their arguments to a jury to settle the "who-what-when-where-why" factual issues. Brown, 230 N.J. at 99. Viewing the facts in the light most favorable to Gonzalez, the

---

[6] Bryant also maintains Gonzalez's alleged smell of marijuana emanating from his body played no part in the stop because it occurred after Gonzalez made the decision to stop him, and would not have applied under N.J.S.A. 39:4-49.1, which only applies to a person who operates a motor vehicle. Because neither the judge nor Gonzalez raised this as a legal basis for Bryant's obligation to provide his identification, we do not address the argument.

motion's opposing party, we conclude Bryant was entitled to a directed verdict on liability.

Our analysis turns not on the stop itself, but what took place thereafter. Gonzalez and his partner were investigating a shooting in Camden that had occurred five to six days earlier about ten to twelve blocks away from a strip mall when they observed a parked car matching the model and color of a car involved in the shooting. They had no belief Bryant matched the description of an alleged shooter or was otherwise involved in the shooting. Bryant was seen exiting the car when the officers parked their car, and Gonzalez claimed he saw Bryant reached towards his waist. At that point, what began as a field inquiry turned into an investigatory stop because Gonzalez thought Bryant may have had a weapon secreted in his waistband. This prompted a frisk of Bryant, which is not contested, and questioning about the shooting. Bryant replied he knew nothing about the shooting. It was not until Bryant refused to present his identification, that Gonzalez claimed he placed Bryant under arrest.

We conclude that after the frisk revealed Bryant did not possess a weapon, he was under no obligation to turn over his identification or answer any of Gonzalez's questions. We find it of no significance whether Gonzalez saw Bryant drive the car, or whether he could infer Bryant had been driving it as the

A-0896-18T4
**Error! Reference source not found.**

trial judge found.  The confrontation was not initiated on the belief Bryant was suspected of violating a motor vehicle law, so he had the right to refuse to turn over his identification.  See N.J.S.A. 39:3-29; State v. Dunbar, 229 N.J. 521, 533 (2017) (holding a police officer may demand a driver's identification incident to a reasonable and articulable suspicion of a motor vehicle violation). Gonzalez's questioning of and identification request to Bryant was because he was seen in a parked car matching the description of a car involved in the shooting.  As stated previously the shooting occurred some ten to twelve blocks from where Bryant was located and had taken place about a week earlier.

Under the circumstances, we do not envision a prudent person would believe there was a reasonable basis for Gonzalez's determination that he had a right to arrest Bryant for obstruction of a shooting investigation for merely not turning over his identification, or not answering questions about the shooting incident.  Bryant committed no unlawful act to impede the shooting investigation.  To rule otherwise gives law enforcement without a reasonable basis the right to demand that a person answer questions or provide identification and charge that person under the obstruction statute for not complying.  Consequently, Gonzalez's liability has been established for violating Bryant's state constitutional right to be free from the unreasonable

seizure of his person and false arrest under N.J. Const. art. I, ¶ 7, actionable under N.J.S.A. 10:6-2(c), and a trial solely on damages is warranted.

IV.

Finally, we turn to the summary judgment dismissal of claims against Levy and Egan, whom Bryant added as defendants through his second amended complaint. Bryant asserted they collectively engaged in a conspiracy to intimidate, harass, and violate his civil rights. Bryant also asserted CCPD[7] was vicariously liable for the officers' conduct. The same judge who presided over the trial granted the motion.

We review a ruling on a summary judgment motion de novo, applying the same standard governing the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017); Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Thus, we consider, as the motion judge did, "whether 'the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Holmes v. Jersey City Police Dep't, 449 N.J. Super. 600, 602-03 (App. Div. 2017)

---

[7] Bryant voluntarily dismissed all his claims against the CCPD at oral argument for summary judgment. Hence, the CCPD is not a party to this appeal.

(citation omitted) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

In his decision delivered from the bench, the judge stated that other than the temporal proximity of Bryant's incidents with Levy and Egan to the initiation of Bryant's lawsuit against Gonzalez and the CCPD, Bryant failed to show any evidence supporting his claims to avoid summary dismissal. The judge determined the proofs showed Levy was merely performing his duties as a police officer to gather information from store owners.

Bryant appeals, arguing the officers' conduct went beyond making simple inquiries. Citing State v. Sutherland, 231 N.J. 429 (2018), he argues our Supreme Court has refused to excuse unconstitutional conduct with the thought that the officer made a so called "good faith" mistake about the law.

A. Dismissal of Claims Against Levy

A-0896-18T4
**Error! Reference source not found.**

Levy's encounter with Bryant, which occurred about six weeks after Bryant filed this lawsuit, falls in the category of a field inquiry. Levy went to Bryant's store to conduct what is known as a "business check" to obtain contact information from local businesspeople. Levy contended he was conducting a routine business check and believed the store was being used by Bryant and others to stock or pedal unlicensed or stolen goods and drugs.

There is nothing in the record suggesting that Levy's motivation was not as he contended, thereby triggering a factual dispute that needed to be resolved by a jury. After Bryant showed his credentials, Levy realized he was a store business owner legally conducting his business and permitted him to carry on his activities without arresting him, issuing him a citation, or questioning him further. Levy's recording of Bryant's contact information as a store owner in case of emergencies cannot be considered harassing, overbearing, or accusatory conduct absent some evidence to the contrary. In addition, because Bryant proffered no evidence Levy had any knowledge of his lawsuit or claims against Gonzalez and the CCPD, there was no factual support for alleging Levy's encounter was retaliation for the lawsuit.

Furthermore, as Levy correctly maintains, we should not consider Bryant's argument before us that his constitutional right to be free from an unreasonable

A-0896-18T4
**Error! Reference source not found.**

search and seizure was violated because the argument is waived for failure to raise it in his opposition to summary judgment. R. 2:6-2(a)(1); Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012), as corrected (Jan. 19, 2012) (holding appellate courts will decline to consider questions or issues not presented to the trial court when an opportunity for such a presentation is available unless the questions so raised go to the jurisdiction of the trial court or concern matters of great public interest). Yet, even considering the argument, it has no merit. Bryant failed to present any evidence in opposition to summary judgment that Levy's "business check" was unjustified in any form or not a proper execution of his police powers.

B. Dismissal of Claims Against Egan

The judge's reasoning granting summary judgment in favor of Egan required a more nuanced analysis. The judge held:

> Egan may have been wrong in terms of whether the [vendor's]license was valid or not, but that, in this [c]ourt's estimation doesn't amount to the type of malfeasance or incompetence that would lead to [denying] qualified immunity . . . . [B]eing wrong is not enough to destroy qualified immunity. And there's nothing else in the facts that are asserted that indicate to the [c]ourt that [Egan] was either intentionally doing

26

A-0896-18T4
**Error! Reference source not found.**

anything to roust, so to speak, the plaintiff. [Egan] was just going about his business . . . .

Nobody disputes that the license was not being worn. Okay. [Bryant] sa[id] he had to take it out of his pocket. And even if [Egan] didn't write him the ticket for that particular aspect of the offense, he wrote him the ticket for him thinking that it was invalid, that's a mistake. It doesn't amount to something that would destroy qualified immunity.

Bryant raises several arguments challenging summary judgment. He argues Egan detained him without cause for five to ten minutes; issuing him a citation and directing him to stop selling his merchandise even though he possessed a valid vendor's license. Bryant contends that in Sutherland, 231 N.J. at 432, our Supreme Court declined to recognize good faith immunity in a related context, when a law enforcement officer's mistake of law was unreasonable due to the unambiguity of a statute. Bryant argues the judge's ruling in effect excused Egan for his ignorance of the law, which he was bound to know and enforce by affording him qualified immunity and granting him summary judgment. Thus, the issue is whether there was a genuine issue of material fact regarding the presence of probable cause, or the reasonable belief that probable cause existed, for Egan to issue Bryant a citation. We conclude

A-0896-18T4
**Error! Reference source not found.**

there is no factual and legal foundation for Bryant's argument that summary judgment dismissal of his claims against Egan was incorrect.

Our analysis begins with the undisputed fact that Bryant did not display his vendor's license as required by the ordinance, therefore affording Egan the right to ask him to produce one. Egan's encounter with Bryant, about eight months after Bryant filed this lawsuit, thus falls in the category of a field inquiry. Thinking Bryant produced a fake license because it was not designed like the newly issued licenses, Egan issued him a citation and ordered him to stop selling and leave. There was no evidence that Egan's conduct was meant to harass Bryant, as the judge determined. There is no indication in the record Egan had an unreasonable belief that Bryant's vendor's license was not valid. Bryant did not show it was well established the City of Camden had issued a new type of license such that under the circumstances Egan should have known Bryant's license was valid. Moreover, there is no indication in the record that the citation against Bryant was dismissed because there was a judicial finding or an acknowledgment by the CCPD that there was no probable cause for its issuance. Given the absence of any facts suggesting Egan's conduct towards Bryant constituted blatant malfeasance or incompetence in the issuance of a citation,

we take no exception to the judge's ruling that Egan had qualified immunity from Bryant's claims.

The fact Egan believed Bryant did not have a valid license and issued him a citation that was later dismissed, does not necessarily deprive Egan from having qualified immunity as Bryant argues. Although Bryant was not arrested, case law interpreting civil rights' claims alleging law enforcement officers' lack of probable cause to arrest is analogous to Bryant's civil rights claim that Egan did not have probable cause to issue him a citation for not having a valid vendor's license.

V.

In light of our ruling that Bryant should have been granted a directed verdict on liability we do not address his argument that the judge erred in denying his motion for new trial.

Affirmed in part and reversed in part for proceedings on damages consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0896-18T4
**Error! Reference source not found.**