**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0235-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ERIC D. WIGGINS,

    Defendant-Appellant.

_____

Submitted January 31, 2022 – Decided February 8, 2022

Before Judges Fasciale and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 16-02-0403.

Joseph E. Krakora, Public Defender, attorney for appellant (Tamar Lerer, Assistant Deputy Public Defender, of counsel and on the brief).

Cary S. Shill, Acting Atlantic Prosecutor, attorney for respondent (Mario C. Formica, Special Deputy Attorney General/Acting Deputy First Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Eric D. Wiggins appeals from his convictions following his pleas of guilty to possession with first-degree unlawful possession of a handgun and third-degree possession of oxycodone with intent to distribute. He contends the court erred by denying his motion to suppress evidence and his pre-sentence motion to withdraw his guilty plea. Unpersuaded by defendant's arguments in support of the appeal, we affirm.

I.

A grand jury indictment charged that on November 25, 2015, defendant committed the following nine offenses: third-degree aggravated assault of Melissa Stickney, N.J.S.A. 2C:12-1(b)(7); third-degree unlawful possession of oxycodone, N.J.S.A. 2C:35-10(a)(1); third-degree possession of oxycodone with intent to distribute, N.J.S.A. 2C:35-5(a); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); fourth-degree unlawful possession of hollow nose bullets, N.J.S.A. 2C:39-3(f); fourth-degree unlawful possession of a defaced firearm, N.J.S.A. 2C:39-3(d); second-degree committing a drug offense while possessing a firearm, N.J.S.A. 2C:39-4.1; first-degree unlawful possession of a handgun having been convicted of a predicate

2

crime, N.J.S.A. 2C:39-5(b)[1]; and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b).

Defendant's Motion to Suppress Evidence

Defendant filed a motion to motion to suppress physical evidence—a handgun and oxycodone pills—seized at the time of his arrest. He challenged the validity of the stop of the vehicle in which the handgun was found, the warrantless search of the vehicle, and the search of his person that resulted in the seizure of the oxycodone. The court conducted a two-day suppression hearing. On the first day, the court addressed the validity of the motor vehicle stop. On the second, the court considered defendant's challenge to the search of his person and the seizure of the handgun from the vehicle.

During the initial day of the hearing, the State presented Galloway Township Police Department Detective William Schroer, who testified that at 1:43 a.m. on November 25, 2015, he was on duty in a patrol car when he received dispatches concerning a domestic dispute at a Township motel. The dispatcher reported there were two parties involved in the dispute, and one of the parties, "the female," left the scene in "a later model Jeep Grand Cherokee . . . [that] was

---

[1] The offense was charged as a first-degree crime in accordance with N.J.S.A. 2C:39-5(j) because at the time of defendant's commission of the crime he had a prior conviction for an offense enumerated in N.J.S.A. 2C:43-7.2(d).

A-0235-20

taupe in color." The dispatcher reported that officers were looking for the party who had left the scene of the dispute in the Jeep.

Schroer observed a vehicle matching the description traveling down a four-lane roadway, and he followed it in his patrol car. He immediately noticed the right, rear, red taillight was out on the vehicle. Schroer testified the vehicle entered an intersection, and "abruptly stopped right in the middle of the intersection with the green light present." The stopped vehicle was located "right . . . where somebody might be if they were making a left turn or right-hand turn, in the middle of a four-lane state highway." Schroer brought the patrol car to a complete stop behind the Jeep because "[he] had to."

After the vehicle stopped, Schroer activated the overhead lights of his patrol car, and obtained verification the vehicle's registration matched that of the vehicle of the party involved in the domestic dispute. The vehicle did not move to the shoulder of the road. It "stayed right in the middle of the intersection." Schroer testified he had not made any signal directing the vehicle to stop and he did not activate the patrol car's overhead lights until after the vehicle abruptly stopped in the intersection.

Schroer then exited the patrol car, approached the Jeep's driver side, and spoke with the driver. The driver, who was female, "had a badly bruised face,

4

had black eyes[,] and bruising around her . . . ear." Based on the dispatcher's report and his observations of the driver's injuries, Schroer determined he needed to investigate further the driver's involvement in the domestic violence incident.

The driver did not have any identification. Schroer asked the driver to step out of the vehicle and, at that time, she advised she had an outstanding warrant against her. She stepped out of the vehicle and left the driver's side door open. Schroer "escorted her to the . . . back of the vehicle." He asked the driver why she stopped in the intersection, but she did not provide a response Schroer could recall.

The driver first advised Schroer her name was Amanda Cortez. She later informed Schroer her name was Melissa Stickney and that "she was basically with" defendant. After the driver identified herself as Melissa Stickney, Schroer arrested her on the outstanding warrant. He also issued summonses to her for being an unlicensed driver and for driving while her license was suspended. Schroer testified he exercised his discretion not to issue a summons for obstructing traffic in the intersection because of the outstanding warrant, "the severity of the incident[,] and what happened with [the] domestic violence." He

5

did not issue a summons for the inoperable taillight for the same reasons, and also because Stickney did not own the vehicle.

Following Schroer's testimony, the court heard argument and rendered an opinion from the bench rejecting defendant's claim there was an unlawful stop of the Jeep. The court found Schroer a credible witness, and determined he properly followed the vehicle after receiving the information provided by the dispatcher. The court also found that based on the totality of the circumstances, including Schroer's observations, he had reasonable and articulable suspicion of two violations of the law supporting the stop: operating the Jeep with an inoperable taillight in violation of N.J.S.A. 39:3-66, and Stickney's obstruction of vehicles in violation of the N.J.S.A. 34:4-67 by stopping in the middle of the intersection on an "essentially four[-]lane state highway." The court concluded the stop was lawful.

The court noted there were other issues related to the seizure of the evidence, including defendant's challenges to the search incident to his arrest and the "alleged observation of a weapon within the car," but noted resolution of those issues would abide the presentation of evidence at the continuation of the hearing.

A-0235-20

At the second day of the hearing, the State presented Galloway Township police officer Ronald Gorneau (Gorneau). He explained that at approximately 1:22 a.m. on November 25, 2015, he responded to report of "a vehicle that was taken without the owner's consent."

He arrived at what he described as a "hotel" and met with defendant, who reported he and his girlfriend, "Ms. Stickney," were involved in "a verbal domestic . . . argument," and she had taken his vehicle without his consent. Defendant told Gorneau "he didn't have a ride and he needed to get home."

Gorneau offered to take defendant home, and defendant accepted. As Gorneau drove defendant home, defendant provided a description of his vehicle that Gorneau provided to the dispatcher. Gorneau was subsequently advised Schroer stopped the vehicle, and Gorneau responded with defendant to the scene of the stop.

When he arrived at the scene of the motor vehicle stop, Gorneau saw Stickney and Schroer standing at the rear of the Jeep. He observed that Stickney had two bruised eyes, and she told Gorneau defendant "had been assaulting her . . . for several days." She also said defendant "was in possession of . . . a silver handgun." Gorneau then placed defendant under arrest for assault.

A-0235-20

Gorneau searched defendant following the arrest and found 198 oxycodone pills in his pocket.

Gorneau also went to the driver's side of the Jeep, the door of which was open. He looked into the vehicle with the aid of a flashlight and observed the "handle of a handgun and also the barrel sticking out from underneath a white towel" located "under the [front, driver's-side] seat, between the framing of the actual floor and the seat." He testified there was "a gap and a space under the seat," and he could see the gun "in plain view when the door [was] open." A photograph of the gun's location as Gorneau found it was introduced in evidence. Gorneau seized the gun, but no further search of the vehicle occurred at the scene. The Jeep was towed to the police department for the purpose of obtaining a search warrant.

After Gorneau's testimony was completed, the court heard argument from counsel and rendered a decision from the bench. The court found Gorneau "to be very credible." The court determined Gorneau observed the gun from a place he was entitled to be, Gorneau discovered it inadvertently, and the gun was in plain view. The court concluded the seizure of the gun was lawfully seized under the plain view exception to the warrant requirement.

A-0235-20

The court also determined the oxycodone pills in defendant's pocket were found as a result of a search incident to defendant's lawful arrest for the assault of Stickney. The court noted there was probable cause for the arrest because defendant first reported to Gorneau that he and Stickney had a domestic dispute, Stickney had injuries to her eyes, and Stickney reported the injuries were the result of defendant's assaults. The court entered an order denying defendant's suppression motion.

Defendant's Plea Agreement and Plea Proceeding

Defendant later entered into a plea agreement with the State. He agreed to plead guilty to first-degree possession of a handgun having been convicted of a predicate crime and third-degree possession with intent to distribute oxycodone. In exchange for his guilty pleas, the State agreed to recommend a sentence of ten years on the first-degree offense with a five-year period of parole ineligibility concurrent to a five-year sentence on the drug charge. It was further agreed the court would: sentence defendant on the first-degree charge in the second-degree range, see N.J.S.A. 2C:44-1(f)(2); impose an aggregate five-year sentence with a five-year period of parole ineligibility; and delay defendant's sentencing to ensure the sentence imposed would run concurrent to any

9

sentences imposed on violations of probation and the conditions of the parole supervision for life sentence defendant received for a prior conviction.

At the plea proceeding, defendant testified he understood the terms of his plea agreement; he read, understood, and signed the plea form; he reviewed the plea form with his counsel; and he answered all the questions on the plea form truthfully. He also testified he was pleading guilty because he believed he was guilty. In response to the court's questions, he further testified he was pleading guilty "voluntarily," and that no one "forced or threatened [him] to plead guilty or enter into [the plea] agreement."

He then testified that on November 25, 2015, he knowingly had 198 oxycodone pills in his pocket, and he intended to share them with a friend. Defendant also testified that on the same day, he placed a .38 caliber revolver in his vehicle while it was parked in front of a motel, and that prior to that day he had been convicted of a predicate crime—second-degree robbery—that made it unlawful for him to possess the weapon.

Based on defendant's testimony, the court found he entered his "plea freely and voluntarily" upon the "advice of competent counsel with whom" defendant testified he was satisfied. The court further found defendant was not "threatened or coerced to enter a plea." The court determined defendant provided an

adequate factual basis for the plea, accepted the plea, and found defendant guilty of the two charges.

At the scheduled sentencing proceeding, defendant appeared with a new attorney. He refused to proceed with sentencing. He did not testify at the hearing, but he addressed the court, claiming that at the time he pleaded he had a different lawyer "and it was his understanding that [he] was copping out to a couple of matters that [did not] pertain specifically to [him]." He asserted he was not in possession of the handgun in the vehicle, he was not advised of his Miranda[2] rights, and there was a Terry[3] stop violation.

He further asserted he was misadvised about what he admitted to during his plea proceeding and did not know he would violate his probation by admitting he committed the offenses. He claimed he was misadvised "to take a guilty plea." He further averred that he understood he was in court to file a motion to withdraw his plea and not to be sentenced. The court adjourned defendant's sentencing to allow him to file a motion to withdraw his guilty plea.

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

[3] Terry v. Ohio, 392 U.S. 1 (1968).

A-0235-20

Defendant obtained another new counsel and filed a motion to withdraw his guilty plea.[4] During the hearing on the motion, defendant's counsel argued defendant "claims that things weren't told to him by his [plea] counsel" and defendant was not aware of possible violations of his prior parole supervision for life sentence when he pleaded. Counsel also stated defendant "says he was pressured and coerced into the taking his plea agreement . . . without knowing all the facts," and defendant's "contention is that he didn't voluntarily enter into this plea agreement because he wasn't fully aware of the consequences of his plea." During his argument, counsel also briefly referred to the factors supporting a withdrawal of a plea established in State v. Slater, 198 N.J. 145 (2009). The State argued defendant failed to satisfy any of the Slater factors, and it urged the court to deny the motion.

The court denied the motion, finding defendant "offer[ed] no support" for his claim he was pressured or coerced into pleading guilty; the claim was otherwise belied by his testimony at the plea proceeding; and defendant offered "no facts to support the claim." The court further noted defendant's claim he

---

[4] The record on appeal does not include any pleadings submitted in support of the motion. See generally R. 2:6-1(a)(1)(I) (requiring the appellant's appendix or the parties' joint appendix include "such other parts of the record . . . as are essential to the proper consideration of the issues").

A-0235-20

was entitled to withdraw his plea because he did not commit the offenses was contradicted by the factual basis provided during his testimony at the plea proceeding.

The court then reviewed each of the Slater factors and determined none supported defendant's request to withdraw his plea. The court found defendant did not establish a colorable claim of innocence because he testified at the plea hearing the handgun was his and that he placed it in the vehicle. The court also found defendant did not establish the nature and strength of defendant's reason for the requested withdrawal supported his request because the reason he proffered—that he was allegedly pressured into pleading—is unsupported by any facts. The court further noted the parties had entered into the plea agreement, and it found the final factor—prejudice to the State if the withdrawal motion was granted—was in equipoise.

The court denied defendant's withdrawal motion and imposed sentence in accordance with the plea agreement. This appeal followed. Defendant presents the following arguments for our consideration:

POINT I

BECAUSE THERE WAS NO BASIS FOR THE STOP OF DEFENDANT'S CAR, ALL THE EVIDENCE FOUND AFTER THAT STOP MUST BE SUPPRESSED.

A-0235-20

POINT II

BECAUSE DEFENDANT DID NOT ENTER INTO HIS PLEA KNOWINGLY AND VOLUNTARILY, THE PLEA MUST BE VACATED.

II.

Defendant argues the court erred by denying his motion to suppress. The argument is founded on the claim Schroer's stop of the Jeep was unlawful because it was for the purpose of interviewing a person believed to have been involved in a domestic dispute only, and it was not otherwise supported by a reasonable and articulable suspicion the driver committed a motor vehicle offense. We are unpersuaded.

An appellate court's review of an order denying a motion to suppress following an evidentiary hearing "is deferential – [the court] must 'uphold the factual findings underlying the trial court's decision so long as those findings are "supported by sufficient credible evidence in the record."'" State v. Nyema, ___ N.J. ___, ___ (2022) (slip op. at 21) (quoting State v. Ahmad, 246 N.J. 592, 609 (2021)). "A trial court's legal conclusions, however, and its view of the 'consequences that flow from established facts,' are reviewed de novo." Ibid. (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)).

"The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee individuals the right to be free from unreasonable searches and seizures." State v. Carter, 247 N.J. 488, 524 (2021). "When police stop a motor vehicle, the stop constitutes a seizure of persons, no matter how brief or limited." Nyema, ___ N.J. ___ (slip op. at 22). A warrantless stop of a motor vehicle does not violate the prohibitions against unreasonable searches and seizures "if it is based on 'specific and articulable facts which, taken together with rational inferences from those facts,' give rise to a reasonable suspicion of criminal activity." Ibid. (quoting State v. Rodriquez, 172 N.J. 117, 126 (2002)). Stated differently, "[t]o justify a stop, an 'officer must have a reasonable and articulable suspicion that the driver . . . is committing a motor-vehicle violation' or some other offense." Carter, 247 N.J. at 524 (alteration in original) (quoting State v. Scriven, 226 N.J. 20, 33-34 (2016)). The State bears the burden of proving a motor vehicle stop is supported by a reasonable and articulable suspicion the driver is committing a motor-vehicle violation. State v. Atwood, 232 N.J. 433, 444 (2018).

Defendant first claims the motor vehicle stop was unlawful because it was effectuated for the purpose of inquiring whether the driver had been involved in the domestic dispute reported to Schroer by the dispatcher. The argument is

belied by the record. Although Schroer testified he followed the Jeep because it fit the description of the vehicle being driven by one of the parties to the reported domestic dispute, he did not testify he activated the lights on his patrol car, thereby effectuating the stop, for the purpose of making an inquiry concerning the dispute. Also, the court did not find the stop valid on that basis. The court determined the motor vehicle stop was supported by Schroer's observations Stickney violated N.J.S.A. 39:4-67 by stopping the Jeep in the middle of an intersection and violated N.J.S.A. 39:3-66 by operating the vehicle with an inoperable taillight.

In pertinent part, N.J.S.A. 39:4-67 prohibits a driver from permitting a vehicle to "occupy a street so as to interfere with or interrupt the passage of other . . . vehicles." The evidence supports the court's determination Schroer's testimony established a reasonable and articulable suspicion defendant violated the statute. Schroer explained Stickney brought the Jeep to an abrupt stop in the middle of an intersection on a four-lane state highway, while she had a green light that would have permitted her to proceed. Defendant's argument Schroer's testimony did not establish that the stoppage of the Jeep in a traffic lane constituted an actual obstruction of the highway ignores that Schroer was in a vehicle following Stickney, and, at a minimum, the stoppage of the Jeep

16

interfered with the patrol vehicle's ability to traverse the traffic lane in which Stickney stopped. Indeed, Schroer said he stopped behind the Jeep because he "had to." In sum, the court correctly determined Schroer had a reasonable and articulable basis to stop the Jeep for a violation of N.J.S.A. 39:4-67.

Additionally, there is substantial credible evidence supporting the court's determination Schroer had a reasonable and articulable suspicion Stickney violated N.J.S.A. 39:3-66 prior to effectuating the stop. In pertinent part, N.J.S.A. 39:3-66 provides that "[a]ll lamps, reflectors and other illuminating devices required by this article shall be kept clean and in good working order." N.J.S.A. 39:3-61 requires that motor vehicles manufactured on or after July 2, 1954, have "two tail lamps, [and] two or more stop lamps, one of each at a side" of the vehicle.[5] "[R]ead together," N.J.S.A. 39:3-61 and N.J.S.A. 39:3-66 "require that a motor vehicle only have two working rear lamps, with at least one working lamp on each side." State v. Sutherland, 231 N.J. 429, 444 (2018). Thus, the Court has explained there is a violation of the statutes "if there is only the minimum one taillight on each side of the vehicle and either of those

---

[5] Schroer testified the dispatcher described the Jeep as "a late model" and the Jeep driven by Stickney fit the description. Defendant does not contend the Jeep driven by Stickney was manufactured prior to July 2, 1954, and we otherwise infer it was not based on its description as "a late model" vehicle.

taillights is not working," but "if a vehicle has two taillights on each side of the vehicle—more than the law requires—and one of those multiple taillights on one side is not working," the statutes are not violated. Ibid.

Defendant argues the State did not carry its burden of establishing there was no working taillight on the right side of the Jeep. He contends the State failed to prove there was only one right rear taillight, and, for that reason, Schroer's testimony there was a right rear taillight out did support a reasonable and articulable suspicion of a violation of N.J.S.A. 39:3-66. We disagree.

Schroer's testimony supports the court's determination. He testified "the right rear [taillight] was out on the vehicle," which, in our view, permits the reasonable inference there was only one rear taillight. Otherwise, he would have said "one of the right rear taillights was out." There is no other evidence there was more than one right rear taillight on the vehicle. Thus, the evidence supports the court's determination Schroer's observation of the inoperable right rear taillight provided a separate but equally dispositive basis for Schroer's reasonable and articulable suspicion supporting the stop.

We therefore discern no basis to reverse the court's determination the motor vehicle stop was supported by a reasonable and articulable suspicion the vehicle's driver committed motor vehicle violations. We decline to address

defendant's claims the stop was invalid because Gorneau testified that Schroer said he activated the patrol vehicle's lights before Stickney stopped the Jeep, and therefore defendant is entitled to a further hearing on the discrepancy in the witnesses' testimony. Those issues were not raised before the motion court. State v. Robinson, 200 N.J. 1, 20 (2009). We note only that the validity of the motor vehicle stop is supported by Schroer's observations of the inoperable taillight alone. We therefore affirm the court's order denying defendant's suppression motion.

### III.

Defendant next claims the court erred by denying his motion to withdraw his guilty plea. He argues he was entitled to withdraw his plea because he was "pressured and coerced" into accepting the plea offer and to provide false testimony establishing his plea's factual basis. He claims the court erred by finding only that he failed to satisfy the Slater standard for a plea withdrawal request because it thereby ignored his assertion the plea was not entered knowingly and voluntarily.

"[P]re-sentence motions to withdraw a plea are governed by the 'interest of justice' standard in Rule 3:9-3(e) . . . ." Slater, 198 N.J. at 158. Rule 3:9-3(e) provides that "[i]f at the time of sentencing the court determines that the interests

of justice would not be served by effectuating the agreement reached by the prosecutor and defense counsel . . . the court may vacate the plea or the defendant shall be permitted to withdraw the plea." Prior to sentencing, "courts are to exercise their discretion liberally to allow plea withdrawals," Slater, 198 N.J. at 156, but "the burden rests on the defendant, in the first instance, to present some plausible basis for [the] request, and his [or her] good faith in asserting a defense on the merits[,]" ibid. (quoting State v. Smullen, 118 N.J. 408, 416 (1990)). We apply an abuse of discretion standard in our review of an order denying a motion to withdraw a guilty plea. State v. Tate, 220 N.J. 393, 404 (2015); State v. O'Donnell, 435 N.J. Super. 351, 372 (App. Div. 2014).

In Slater, the Court established four factors to be considered and balanced in the determination of a motion to withdraw a guilty plea: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." 198 N.J. at 150, 157-58. "Trial courts should consider and balance all of the factors . . . in assessing a motion for withdrawal of a plea. No factor is mandatory; if one is missing, that does not automatically disqualify or dictate relief." Id. at 162.

Defendant does not directly challenge the court's assessment and determination of the Slater factors.[6] He instead argues the motion court erred by failing to consider his contention his motion should have been granted because his plea was not voluntarily given in the first instance. He avers his plea counsel coerced him into pleading and misadvised him about the consequences of his plea.

"Generally, representations made by a defendant at a plea hearing concerning the voluntariness of the decision to plead, as well as any findings made by the trial court when accepting the plea, constitute a 'formidable barrier' which [the] defendant must overcome before he will be allowed to withdraw his plea." State v. Simon, 161 N.J. 416, 444 (1999). Defendant testified under oath at the plea proceeding he entered the plea voluntarily and was not pressured or coerced into pleading guilty. Based on defendant's testimony, the plea court found as a fact that he entered the plea knowingly and voluntarily.

In support of his motion, defendant did not present any evidence permitting him to overcome the formidable barrier created by his testimony and the court's findings at his plea proceeding. Defendant failed to present any

---

[6] Although not an issue raised directly on appeal, our review of the record does not reveal any abuse of discretion in the court's findings or balancing of the Slater factors in its denial of defendant's withdrawal motion.

21

evidence supporting any facts that would have allowed the court to properly conclude his plea was not voluntary or that he was misadvised about any of the consequences of his plea by his then-counsel. See R. 1:6-6 (providing "motions . . . based on facts not appearing of record or not judicially noticeable" shall be supported by "affidavits made on personal knowledge setting forth only facts which are admissible in evidence in which the affiant is competent to testify").

The appellate record is bereft of any competent evidence submitted to the court in support of his motion establishing the coercion, pressure, and mis-advice he contends required the withdrawal of his plea. Defendant did not supply his motion papers in his appendix, and, based on our reading of the motion transcript, we suspect that is because his motion was supported by only the assertions of his counsel in a brief. See generally Baldyga v. Oldman, 261 N.J. Super. 259, 265 (App. Div. 1993) ("The comments following [Rule 1:6-6] illustrate that its purpose is to . . . eliminate the presentation of facts which are not of record by unsworn statements of counsel made in briefs and oral arguments.").

On appeal, defendant's assertions are supported only by citations to the vague and conclusory bald assertions he made during an unsworn statement to

22

the court at his original sentencing date, when he sought and was granted an opportunity to file the withdrawal motion. As noted, the record on appeal is also devoid of the papers filed in support of the motion, and thus we are without any basis to conclude that on the record presented to the motion court and on appeal, the denial of the withdrawal motion constituted an abuse of discretion. We reject appellate counsel's effort to breathe life into defendant's challenge to the court's order because the withdrawal motion suffered from an irremediable and fatal infirmity—a lack of facts supported by evidence. Since defendant's arguments supporting his withdrawal motion and appeal from its denial are unsupported by any competent evidence, there is no basis presented permitting a reversal of the court's order denying his request to withdraw his plea.

Any arguments presented by defendant we have not addressed directly are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23